Good morning, Your Honors. I'm Tim Pori. I represent Mateo Estrada. Your Honors, I believe that there are four reasons why this Court should overturn Mr. Estrada's conviction. The first is that the Court gave an erroneous instruction to the jury, which in effect directed a verdict in favor of the government by omitting an essential element of the offense. The second reason is that there was insufficient evidence presented to the trier of fact that Mr. Estrada in fact had knowledge that the chemical was pseudoephedrine. The third reason for error is the Court's denial of Mr. Estrada's Youngblood-Combetta motion. And, of course, the last one is the Court's admission of the 404B fingerprint evidence. Given the fact that the Court's instruction misstated the elements of the offense, the Court should use the de novo standard of review. It's a question of plain error at this point, is it not, because the defendant consented to the instruction? Well, I disagree, Your Honor, respectfully. I believe that the counsel for Mr. Estrada on two occasions basically said explicitly to the Court when the issue came up, quote, it's clear on its face that he had to knowingly possess pseudoephedrine. And that's on page 359 of the record. The Court ultimately said to counsel, I don't think that's the law. I think that trial counsel's assertion on two separate occasions that, quote, it's clear on its face that he had to knowingly possess pseudoephedrine does not constitute an acquiescence to the Court's instruction. I think, given that, I don't think it would be appropriate for counsel to literally argue with the trial court once the court had emphatically stated that I don't think that's the law. So I think that given the trial counsel's assertions to the trial court, I think that de novo standard of review in this case is appropriate. I think what's most important about this case is that the statute itself, 21 United States Code 841c, has two discrete and insular scienter requirements. One, that the defendant has to knowingly or intentionally possess pseudoephedrine. Well, you keep using pseudoephedrine, but the statute doesn't say anything about pseudoephedrine. Well, that's true. But in this case, pseudoephedrine applies. Well, right. Does he have to know that it's a listed chemical, or does he have to know that it's pseudoephedrine? There's two different requirements. The first one is he has to know the nature of whatever chemical he possesses, because you have two different elements that require two different elements. Right. He must knowingly or intentionally possess a listed chemical. Right. Well, it's just that's why we quoted the Staples decision, because you have to know what you have before you can knowingly possess it. You can't. You have to know that it's something you're not supposed to have before you can be imputed with a knowledge. Right. But you don't have to know that it's pseudoephedrine. You can know that it's a listed chemical. Well, it doesn't say listed chemical. Well, I'm reading 841. What are you reading? I'm reading the statute. What are you reading, counsel? I was reading the record. Okay. But the point I make is, Your Honor, that you have to know it's something. Okay. Do you have to know that it's – does the government have to prove that he knew that it was pseudoephedrine? Yeah. Well, they have to prove he knew it was something at least, and they never did that. Well, it's something that's used in the manufacture of some drug. Listed substance. Yes. We agree. The government only had to prove that he possessed it. No, I think the statute is written in such a way so that it's broad enough that it can include a number of chemicals that are used. There's obviously more than one prohibited chemical that's used in the manufacture of a particular drug. In this case, it was pseudoephedrine. But I don't think just because the statute is broad enough to include a various number of drugs that that relieves the government of its burden to prove beyond a reasonable doubt that the defendant knew that he possessed something. Otherwise, the two – The reason I ask, counsel, is because H41A also has a knowing or intentional possessed requirement, but with respect to controlled substances. And in a line of cases, counsel has argued that there was a mistake of fact, that, in fact, what somebody possessed was cocaine and that what they thought they possessed was marijuana. And so they wanted to argue that, therefore, the defense counsel tried to argue that you had to know that, in fact, you possessed cocaine. And if you thought you possessed marijuana, then you were off the hook. Correct. And we have rejected that defense. And that's an interesting point. And the government cites Carranza and Ramirez-Ramirez for that proposition. But those cases are factually distinguishable in very significant ways. In each of those cases, those were smuggling cases where the defendant drove – in one case, he drove over the one – in another case, he was riding in the passenger compartment. In both cases, the defendants gave statements. And in both cases, the defendants gave statements admitting that they knew that they had some controlled substance. They admitted, for example, oh, I thought it was marijuana. They didn't say nothing. They said, oh, I thought I had marijuana. And what happened is, is that then trial counsel tried to offer a mistake of fact defense to say, well, because I thought I had marijuana and, in fact, I had cocaine, I'm not guilty. And the court said he admitted that he had some controlled substance in his possession. He cannot escape criminal liability merely by saying I was mistaken about what I had. That's why I'm curious as to why you keep wanting to argue that the government had to prove that he knew that he had pseudoephedrine. Well, because they have to prove he had something. Yeah, but the statute says list of chemical. It doesn't say pseudoephedrine. It doesn't say that. I will submit to that. But the bottom line is they have to prove that he knew he had something. So if we take out pseudoephedrine and we put in some listed chemical, the government still has to prove that he knew he had it. And you can't know you have something unless you know what it is. And that's why the Supreme Court has been very consistent. In the Staples decision, the man had a weapon. The government had to prove that he knew it was a machine gun. And that's the same thing here. There's no evidence presented to the government that Mr. Estrada, in fact, knew the nature of the chemical that he had. There's no evidence at all whatsoever. And I think because of that, the first element was not met. It was not proved beyond a reasonable doubt. Now, the second element that he would have to know or have reason to know that the listed chemical would be used to manufacture, that's a different element, and that addresses a different issue. We speak specifically to the first element. If the government gets over this one, they're not going to have much difficulty with the second one, are they? Well, I'm afraid not. He's got acetone and denatured alcohol. It's pretty clear what he's up to. Again, I mean, what's not present is some other chemicals that require the manufacture of methamphetamine, and there's not glassware and there's not some other things. But I think the government still has to prove that he knew what those pills were. And because the alcohol is not one of the listed chemicals, as the government was pointing out over and over in the trial court, they don't get to impugn knowledge to him based upon the fact that he had all of this denatured alcohol in the vehicle. So I think the government had a burden to prove it, and it's just some chemical. Even if you say, if you take out pseudoephedrine and say some chemical, there was no evidence that he knew he had anything that was a prohibited chemical, and that's why the cases cited by the government, Ramirez-Ramirez and Carranza, are factually distinguishable. Well, can't people draw inferences when somebody's driving around with that much? You can certainly make inferences. This definitely was a circumstantial case, but you still have to have a legal basis or factual basis upon which to make a legal inference. Well, a common-sense inference would be he was on his way to make the illicit substance. Well, that's one interpretation, certainly. Well, I mean, that's the inference the jury drew. Well, that's not necessarily so, given the fact that they asked the question. I think what's significant about this particular case is the jury was obviously struggling with this particular issue. I'm not sure I understand your position. Initially, you said that the government had to prove that he knew it was pseudoephedrine. Now you say that the evidence wasn't sufficient to find that he knew he was carrying illicit substances. Well, and that's my second argument. They're not consistent. The sufficiency of the evidence argument. That he didn't know that he was carrying an illicit substance. The first, that there was insufficient evidence presented by the government that what he knew was an illicit substance. What he was carrying. Yes. Now, he was a passenger. His, the defense's position was. Is your position that he was surprised to find that there were pills in the back of the truck, or is your position that he was surprised to learn that the pills were a listed chemical? Well, I have no position about his state of mind because that wasn't proved by the government. He's not surprised to know that he's carrying acetone or denatured alcohol. Well, I can't make that presumption because that's really not supported by the record, Your Honor. I think there is the presence of this alcohol, but I think that in this particular case the government hadn't proved that. Okay. So maybe he was just carrying a truckload of aspirin as far as he's concerned. The government didn't prove that he knew what he had was a prohibited chemical. Good morning, Your Honors. I'm Carolyn Delaney. I was trial counsel below in this matter. The crux of the dispute relative to this argument that Mr. Pori has spent his time on is, did the government have to prove that Mr. Estrada knew he was carrying pseudoephedrine, or did we have to prove that he knew he was carrying pills which were, in fact, pseudoephedrine? In other words, the government had to prove that he was more than a blind mule. He was more than somebody who unknowingly was transporting what, in fact, was a drug. Did the government ask for a JUUL instruction here? No. Okay. So, counsel, walk through 841A and C with me. And if you wouldn't mind starting with A, because in this case, and I'll tell you what concerns me, and that is that under 841A we have apparently held, and we are joined in this by a number of other circuits and there seems to be no contrary law, that in order to satisfy 841A, that the government must show that a person knowingly or intentionally possesses a controlled substance. We have relieved the government of proving the precise identity of the controlled substance, that is, whether it was marijuana or cocaine, so that you can't say, gosh, I thought I was carrying marijuana and now it turns out to be cocaine, I'm free. We won't free you of that. But you do have to prove that you know that you're carrying a controlled substance. Yes. Now, that language is very, very close to that first scienter requirement in 841C. The difference between 841A and 841C lies in the additional scienter requirement. There is a second scienter requirement. But how do we get to that second scienter requirement and make 841A and 841C consistent? They're different charges. Well, I understand that, but we have almost identical language. But the almost is where the rub is in this case. Because the guilty knowledge for 841A1 lies in, there's only one way to be guilty of that. Well, two, possession or distribution. But the guilty knowledge lies in the knowledge that you're, in fact, carrying or distributing a controlled substance. Under 841C1, there's two knowledge requirements. One, that you know you actually possess, in this case, the pills. And two, that you possess those pills with the knowledge or reasonable cause to believe that they are going to be used in manufacturing methamphetamine. So what Mr. Pori, what the defendant in this case is trying to do is to add a third knowledge requirement to 841C1. Well, the question, I think, that Mr. Pori raises is where, is what, does knowing only attach to possess or does it attach to possesses a listed chemical? That's precisely the question. And his rendition of this is, and I think the government's interpretation is perfectly plausible. What concerns me is whether it's consistent with our construction of 841A. And I think that Mr. Pori's construction of 841C does not undo the second cyander requirement. It doesn't undo it. In other words, you could knowingly possess a listed chemical, but possess it for a perfectly lawful purpose. That is, not knowing that it was going to be used in the manufacture of a controlled substance. So anybody who's transporting pseudoephedrine to a pharmacy, for example, is not going to be liable under 841C even if they know that they've got pseudoephedrine because pseudoephedrine, although a listed substance, is not unlawful to possess. Well, that's right. That's why there are two cyander requirements in 841C1. And the second, of course, is being that it's going to be used to manufacture methamphetamine. If you've got a completely controlled substance as opposed to a listed chemical, then the crime is either knowingly or intentionally possessing or distributing. So there are different statutes. They can be reconciled in simply that way, that there are different statutes attacking very different behavior. What Mr. Pori's construction would do would allow Mr. Estrada to hide behind the argument of, well, you can't ever know what I knew in my head. It was a circumstantial case. The volume of the pills combined with the acetone and all the other things that you've already mentioned were very clear in leading the jury to the only reasonable conclusion, which was that he was transporting the pills to make methamphetamine. But what would we do in a situation where a defendant said, well, I didn't know that it was pseudoephedrine. I thought that it was ephedrine. And those, you know, you haven't proved that I knew it was pseudoephedrine. You've only proved, perhaps, that I thought it was something else, pseudoephedrine, or, even worse, aspirin. How would we ever be able to do that? It's not a reasonable. Well, okay, let's suppose that Mr. Estrada had purchased a great deal of acetone and denatured alcohol. We have very strong suspicions as to what he intends to do with that, but those are not listed chemicals. And somebody slips a gallon of pseudoephedrine pills in there into the truck at the last minute. He doesn't know about that. But he doesn't know he's carrying the pills. And he's not guilty because he doesn't knowingly possess the pseudoephedrine. Well, he knows that he's got something back there. It doesn't matter. He doesn't knowingly possess the pseudoephedrine. In other words, he doesn't know that he's actually in physical control of the pills, of the listed chemical. He would not be guilty of that. What if somebody says, here, take this box of aspirin, and now he knowingly possesses it. It turns out to be pseudoephedrine and not aspirin. If he's on his way to a methamphetamine lab, then he would be guilty because he would knowingly possess the substance that was in fact a listed chemical. Even though what he thought he had was aspirin. Yes. So what's the evidence in this case that he knowingly possessed the listed substance? It's a circumstantial case. What's the principal evidence? The principal evidence was the volume of pseudoephedrine, which was 154 pounds, worth approximately $80,000 to $120,000. The 78 gallons of denatured alcohol, the respirator masks, the fact that he, the evidence showed, personally purchased some of the denatured alcohol that very day in Union City. He was the only person found in proximity to the rollover accident in an extremely remote location. And I would point you to the supplemental excerpts of record that have the photographs of this particular location. He was the only person there. All of that combined together with the 404B evidence that was introduced, that his fingerprint had been found on a 22-liter flask nine years prior, that was in a storage locker with 625,000 ephedrine pills, all combined for the reasonable inference that he was taking these pills, which were, in fact, pseudoephedrine, there's no dispute about that, with the knowledge or reasonable cause to believe that they would be used to manufacture methamphetamine. I'm almost out of time. I'm prepared to submit unless you have any other questions. Thank you. Thank you, Counsel. The important part here is that Mr. Estrada was driving a truck with a camper shell. Stuff was in the back of the truck under the camper shell. This is not the same thing as Carranza and Ramirez-Ramirez, where the defendant admitted that he knew he had some substance. There's no evidence that he even actually knew what was in the back of the camper shell. What happened was this was a rollover vehicle accident, and after the accident the pills and stuff was spread all over it. There was no evidence that he even knew that there was anything in the back of the truck. So I think the government's argument about the quantity of the pills and the sheer volume of the substance somehow suggests that he knew what was in there. I think the camper shell covering the truck militates against that. Thank you, Counsel. We thank Counsel for the argument. The next case is United States v. Carrillo Valenzuela. Good morning.
judges: Noonan, Bybee, Schwarzer